### Richmond

## Commonwealth of Virginia, Department of Mental Health and Mental Retardation

### v.

## James L. Jenkins

December 3, 1982.

Record No. 801980.

Present: All the Justices.

*Dennis G. Merrill, Assistant Attorney General (Marshall Coleman, Attorney General; Walter H. Ryland, Chief Deputy Attorney General,* on briefs), for appellant.

*Richard A. Money (Lowe and Money, P.C.,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The question presented is whether a person charged with a crime and civilly committed to a State mental hospital is liable to the Commonwealth for expenses incurred for care, treatment, and maintenance at such facility.

The appellant, Commonwealth of Virginia Department of Mental Health and Mental Retardation, filed suit in 1980 in the court below against appellee James L. Jenkins, a patient in Southwestern State Hospital in Marion. Alleging Jenkins had incurred certain charges while a patient there, the Commonwealth sought a judgment against Jenkins for $19,921 due as of March 31, 1980. Following an ore tenus hearing at which the facts were stipulated, the trial court denied the claim and dismissed the suit with prejudice in a September 1980 order, from which we awarded the Commonwealth an appeal.

Jenkins was taken into custody and charged in Radford with murder. On February 15, 1977, he was committed by court order to Southwestern State Hospital for observation, pursuant to Code § 19.2-169.[1]

The hospital staff determined Jenkins was not mentally competent to stand trial. Thus, according to other provisions of § 19.2-169, *infra,* Jenkins was committed to the care of the hospital

---

[1] That statute provided, in part:

If, prior to arraignment of any person charged with crime, either the court or attorney for the Commonwealth or counsel for the accused has reason to believe that such person, because of mental disease or defect, is in such mental condition that he lacks substantial capacity to understand the proceedings against him or to assist in his own defense, and it is necessary for evaluation and observation in order for the court to determine whether such person is mentally competent to plead and stand trial or understand the proceedings against him and assist in his own defense, the court or the judge thereof may, after hearing evidence or the representations of counsel on the subject, commit the accused to a State facility designated by the Commissioner of Mental Health and Mental Retardation for examination, evaluation, observation, and report if it is felt by the court that temporary hospitalization, not to exceed forty-five days, is required for such determination and such commitment shall be under such limitations as the court may order, pending the determination of his mental condition.

Section 19.2-169 was repealed by the 1982 General Assembly. Acts 1982, ch. 653. See §§ 19.2-168.1, -169.1 and -169.3, for present provisions covering the same subject matter.

under the civil procedures provided in Chapter 2 of Title 37.1. He remained so committed from May 12, 1977 through July 13, 1978, the first period for which the Commonwealth seeks reimbursement of charges.

Jenkins then was found competent to stand trial. He was released from the hospital into the custody of the Sheriff of the City of Radford. He remained in jail from July of 1978 until the Spring of 1979, when his mental condition deteriorated and a question again was raised about his competence to stand trial. Accordingly, he was referred a second time to Southwestern State Hospital pursuant to a new order entered under § 19.2-169.

When the 45-day observation period expired, the hospital staff again determined he was not competent to stand trial. Consequently, a second civil commitment order was entered placing Jenkins under the care of the hospital. He remained civilly committed at that facility from May 23, 1979 through March 31, 1980, the second period for which the State seeks reimbursement of charges.

Denying the Commonwealth's claim, the trial judge reasoned that Jenkins had been an "inmate" of the State correctional facilities during the entire period beginning with his arrest in February of 1977 through March of 1980. The court noted that Jenkins was charged with a crime, was committed to a State hospital for observation under § 19.2-169 with a warrant pending against him, was found incompetent to stand trial, and was committed to the same hospital for care, treatment, and maintenance. He ruled that under such circumstances Jenkins was an "inmate" of either the jail or the hospital and, "as such," there was "no difference" in the period of observation under § 19.2-169, for which the State did not charge, and in the period of hospitalization under Title 37.1, a mere "technical change in commitment," for which a charge was made. We disagree.[2]

We are of opinion that the applicable statutes provide in plain terms that a person is liable for the expenses of his care, treatment, and maintenance when confined to a State hospital

---

[2] On appeal, Jenkins contends the Commonwealth failed to prove certain facts essential to sustain a recovery against him. Such an argument was not made in the trial court and will not be noted for the first time on appeal. Rule 5:21. Also, Jenkins mounts a broadside constitutional attack on the entire statutory scheme under which he was hospitalized. We are unable properly to consider these constitutional arguments because they are based, in part, on assumptions of fact which are not supported by the meager oral stipulation in the trial court.

pursuant to Title 37.1, even though he previously had been confined to the facility pursuant to Code § 19.2-169 as a person charged with crime.

In addition to the provisions already noted, *supra,* § 19.2-169 also provided that if a defendant, upon observation, is found mentally incompetent to stand trial

> "or requires hospitalization for the treatment of his mental disease or defect, an appropriate *court shall commit the accused pursuant to the provisions of § 37.1-67 of the Code* of Virginia and, thereafter, *the accused shall be subject to the provisions of Title 37.1* with respect to treatment, care, transfer, discharge, *and all other applicable sections."* (Emphasis added.)

Jenkins was committed twice under that provision pursuant to civil commitment orders entered under Code § 37.1-67.1 *et seq.,* the successors to § 37.1-67. Consequently, having been so committed, Jenkins was "subject to the provisions of Title 37.1" by virtue of the specific language of § 19.2-169.

Included within Title 37.1 is Code § 37.1-105 which provided, in part:

> "*Any person* who has been or who may be admitted to any State hospital . . . *shall be liable* for the expenses of his care, treatment and maintenance in such hospital . . . ." (Emphasis added.)[3]

The foregoing language, considered with the specific provisions of § 19.2-169, clearly fixes liability upon Jenkins for the two periods of hospitalization in question.

■ The trial court based its decision on the conclusion that Jenkins was an "inmate" at all times during his stay in the State mental hospital. But the Attorney General points out "that there is no significant difference between the handling [by the hospital authorities] of patients incapable of standing trial and other involuntarily committed patients." He says the only apparent difference was set forth in § 19.2-169:

---

[3] In 1982, § 37.1-105 was rewritten. Acts 1982, ch. 50.

"[A]t least ten days prior to the unconditional release or discharge of such individual charged with a crime, the facility director shall notify the appropriate court or judge thereof, the appropriate attorney for the Commonwealth and the attorney for the accused of such intended release or discharge."

Thus, as the Attorney General notes, the hospital director could have authorized the patient's unconditional release, provided he notified the appropriate criminal justice authorities. Upon such notice, the clerk of court was required to issue a praecipe to an officer of the court directing him forthwith to bring the person from the hospital facility and commit him to jail or the custody from which he was removed. Code § 19.2-171.[4]

Thus, when an accused is civilly committed under Title 37.1, he is not under the direct control of the criminal authorities during his incompetency. Moreover, Code § 37.1-1(16) defines one involuntarily admitted to a State hospital according to the provisions of Title 37.1 as a "patient." In short, as a practical matter as well as by statutory definition, Jenkins was a patient, not an inmate, during the periods in question.

Consequently, the Commonwealth was obligated to proceed against Jenkins according to the mandate of Code § 37.1-110, which provided, in part:

"Upon the failure of any patient . . . to make payment of [his expenses], and whenever it appears from investigation that such patient, . . . has sufficient estate, or there is evidence of ability to pay such expenses, the Department shall petition [the appropriate court] for an order to compel payment of such expenses by persons liable therefor. . . ."[5]

For these reasons, the judgment below will be reversed and the case will be remanded for a new trial limited solely to the issue of the amount due by Jenkins to the Commonwealth for reimbursement of expenses.

*Reversed and remanded.*

---

[4] Code § 19.2-171 was also repealed in 1982. Acts 1982, ch. 653.

[5] In 1982, § 37.1-110 was rewritten. Acts 1982, ch. 50.